UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

ROBERT KRAMER,

    Plaintiff,

    v.

CARTER GREEN, BARBARA GREEN,
RASOOL AKRAM, and FONDREN
INTERNATIONAL, INC., a Nevada
Corporation,

    Defendants.

No. 07 C 50022
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

In this motion to dismiss, three of the four defendants argue that there is no personal jurisdiction over them. Alternatively, they urge a change of venue.

The complaint alleges that Robert Kramer ("Kramer") was damaged by a version of an advance fee loan scheme. It is described as an ordinary transaction, securing financing for a fee, save for the fact that the amount Kramer advanced is higher than is customarily alleged in such cases.

Kramer argues, in effect, that there is specific jurisdiction over Carter Green, Barbara Green, and Fondren International, Inc. ("Fondren").

According to the complaint, Kramer owns a feed store in Cherry Valley, Illinois which he wanted to sell in 2003. D'Andre Stinnette ("Stinnette") contacted him, expressing an interest in purchasing the store. After meeting with transaction professionals, Stinnette agreed to buy the feed store for $1.6 million and told Kramer that he intended to finance the purchase through, among others, Carter Green ("Carter") and Fondren. Kramer and Carter began speaking on the

telephone in March 2004. Carter told Kramer to transfer $320,000 into a Fondren escrow account, which would be repaid within 90 days. Kramer took the money from his retirement account and wired it to the designated American Express account on March 19, 2004. On that day, Barbara Green transferred the funds from American Express to a Fondren account controlled by her. Prior to that transfer, the Fondren account was nearly empty. Before the day ended, she sent $10,000 to accounts in India and Ohio. In April, Barbara sent the remaining $300,000 to an attorney in Denver.

The money was not repaid within 90 days, and through the next year, Carter Stinnette and another defendant all told Kramer that everything was going well and that he had not been duped. They falsely told Kramer that the funds were still in the account. Carter sent letters to Stinnette for Stinnette to show Kramer. These Carter letters purported to show the transaction was ongoing. By mid-2006, Kramer filed for bankruptcy. He served process, as well as subpoenas, on Carter and Barbara in California.

Jurisdiction here can be founded on what some have called a target theory. If a person aims his conduct toward residents of another state, then that person is subject to the state's jurisdiction even if they never enter that state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985); *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997); *Kalata v. Healy*, 728 N.E.2d 648, 766-67 (Ill. App. Ct. 2000); *see also Cleary v. Phillip Morris, Inc.*, 726 N.E.2d 770, 772-73 (Ill. App. Ct. 2000) (those who conspire to defraud an Illinois resident are subject to Illinois jurisdictions).

Carter spoke with Kramer in Illinois, asked for money, sent letters to be given to Kramer in Illinois which were intended to lull Kramer, and lied to Kramer in Illinois regarding material

2

issues. Barbara took the money which was the fruit of the fraud, and disbursed it improperly. Fondren was the corporate vehicle used to perpetrate the fraud. Carter wrote his lulling letters on the Fondren letterhead. Carter was Fondren's agent, and his actions as agent also submitted Fondren to Illinois jurisdiction. A conspiracy has been adequately alleged and reasonably supported by many exhibits. No one can read the complaint and exhibits and conclude that there is a naked or conclusory allegation of conspiracy. That conspiracy includes Stinnette, whose conduct within the State of Illinois is not disputed for the purpose of this motion.[1]

Contrary to the movant's assertion, Kramer's cause of action does not arise out of his agreement with Stinnette; it arises out of Defendants' "alleged misappropriation of Kramer's money."

Carter told Kramer to send money. The fact that Stinnette did as well does not alter that. Also, application of the fiduciary shield doctrine is inappropriate on the record as it now exists.

On the record as it now stands, it is fair to litigate this case in Illinois. After some discovery, it may become apparent that another jurisdiction would be a more appropriate place to try this case, although I doubt that Nevada (suggested by Defendants) would be better than California. As it stands today, Defendants have not shown that California is a better location than Illinois, and it may in fact be worse. So, Plaintiff is entitled to his choice of venue. There is no apparent need for exhaustive localized discovery in any state other than Illinois. There are unlikely to be many records in warehouses in Nevada, and out-of-state witnesses can be deposed

---

[1] Fondren, a corporation, may be protected from being brought into Illinois on solely a conspiracy basis. I doubt this intra-corporate conspiracy protection applies in cases where the agent is acting as a principal rather than an agent, or when his interests diverge from that of the corporation. In any event, Fondren did perform acts directed against Kramer by fraudulently disbursing Kramer's funds.

in their home states. There may be discovery of other alleged incidents in California and Michigan as well, so Nevada does not seem like a likely candidate.

The motion to dismiss for lack of personal jurisdiction and the motion to change venue are both denied.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: May 9, 2007